## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| AMBER MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:19-cv-04969 |
| | ) | |
| v. | ) | Honorable Virginia M. Kendall |
| | ) | |
| ECOLAB INC., | ) | Magistrate Jeffrey Cummings |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S MOTION TO COMPEL ARBITRATION AND
### TO DISMISS OR, IN THE ALTERNATIVE, STAY PROCEEDINGS

Defendant Ecolab Inc. ("Ecolab" or "Defendant"), by and through its attorneys, Patrick J. Rocks and Dana S. Elfvin of Jackson Lewis P.C., submits this Motion to Compel Arbitration and to Dismiss or, in the Alternative, Stay Proceedings pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3 and 4. Alternatively, Ecolab seeks dismissal of Moore's claims pursuant to Federal Rule of Civil Procedure 12(b)(3) for improper venue. Although Rule 12(b)(3) clearly applies when an arbitration agreement requires arbitration in another district, authority in this district indicates Rule 12(b)(3) also may be the appropriate procedural rule for motions to compel arbitration within the district. *Compare Soucy v. Capital Management Services, L.P. et al.,* No. 14 C 5935, 2015 U.S. Dist. LEXIS 9991, *2 n.1, *8 (N.D. Ill. Jan. 29, 2015) (construing a motion to compel arbitration which sought dismissal as a motion to dismiss pursuant to Rule 12(b)(3)), *with HTG Capital Partners, LLC v. Doe*, No. 15 C 02129, 2016 U.S. Dist. LEXIS 18458, *26-27 (N.D. Ill. Feb. 16, 2016) (a motion under the FAA is the appropriate vehicle, not Rule 12(b)(3), because arbitration would take place in this district).

## I.      <u>INTRODUCTION</u>

Arbitration is the required forum for resolving Plaintiff Amber Moore's ("Moore" or "Plaintiff") claims. While employed at Ecolab, Moore electronically entered into a Mediation and Arbitration Agreement ("Arbitration Agreement") stating that "any and all claims or controversies alleging violations of federal, state, local or common law . . . arising out of or in any way related to" employment with Ecolab must be resolved by "final and binding arbitration." Exhibit 1: Declaration of Stefanie Cossalter ("Cossalter Decl."), Ex. 1.7. The claims in this action, which allege disability discrimination and retaliation arising out of Moore's employment with Ecolab, fall squarely within the scope of the Arbitration Agreement. Defense counsel provided Plaintiff's counsel with a copy of Moore's agreement to arbitrate and evidence that she entered into that agreement, but she has refused to voluntarily withdraw this lawsuit or submit her claims to arbitration.

Consistent with the terms of the Arbitration Agreement and well-established federal law, this Court should (1) compel Moore to arbitrate her claims against Ecolab and (2) dismiss, or in the alternative, stay the present action. Additionally, Ecolab requests that all pending deadlines, including the September 16, 2019 deadline for the parties to submit their initial MIDP responses, be stayed pending a decision on this motion.[1]

## II.      <u>STATEMENT OF RELEVANT FACTS</u>

### A.      **Moore and Ecolab Entered into an Arbitration Agreement that Requires Binding Arbitration.**

Moore was an employee of Ecolab in October 2014. Complaint, ECF No. 1, ¶¶ 14-16; Ex. 1: Cossalter Decl., ¶ 5. In October 2014, Ecolab implemented a mandatory Ecolab Associate Resolution Resource ("EARR") program which addressed dispute resolution and included the

---

[1] Defendant anticipates it will file a separate, agreed motion seeking this relief.

Arbitration Agreement. Ex. 1: Cossalter Decl., ¶ 6. Ecolab had previously worked with a third-party e-learning and training platform, Corepedia, to implement another new policy for Ecolab. Because of this, Ecolab elected to use Corepedia for the implementation of its EARR program. *Id.* at ¶ 7.

On October 3, 2014, an email announcement was sent to Ecolab employees from Laurie Marsh, Executive Vice President, Human Resources, informing them that Ecolab was introducing the EARR program. Ex. 1: Cossalter Decl., ¶ 8 and Ex. 1.1. The email informed employees that they were required to sign the Arbitration Agreement by October 22, 2014. *Id.* The email notified employees they would receive a training module about EARR, with an opportunity to sign the Arbitration Agreement, on October 8, 2014. *Id.* The October 3, 2014 email also included a link to a newsletter titled "Ecolab Associate Resolution Resources (EARR) and the Mediation and Arbitration Agreement." Ex. 1: Cossalter Decl., ¶ 9 and Ex. 1.2. Ecolab also mailed the newsletter to employees' homes. *Id.*

On October 8, 2014, employees were sent an email containing a unique link which would permit the employee to access the Corepedia EARR training module and Arbitration Agreement. Ex. 1: Cossalter Decl., ¶ 10 and Ex. 1.3. This email was sent to employees' Ecolab email accounts, for which employees created their own unique passwords that were changed regularly by each employee. *Id.* The training module provided the employee the opportunity to read and sign the Arbitration Agreement electronically. *Id.*

On October 13, 2014, an email was sent to Moore reminding her to use the link and password provided to her to view the training module and sign the Arbitration Agreement. Cossalter Decl., ¶ 11 and Ex. 1.4. That day, Moore logged into the EARR training module at 5:52:10 a.m. (MT) and logged off at 8:01:37 a.m. (MT). *Id.* at ¶ 12. On information and belief, she

did not complete the training at that time; if she had, the system would have created the confirmation email it sent her at 1:21 p.m. (CT). *Id.* She logged back into the system at 12:15:31 p.m. (MT) and completed the training at 12:21:40 p.m. (MT). *Id.* Moore completed the EARR course when she agreed to the arbitration agreement by clicking the "Agree" button. *Id.*

Once the employee clicked on the link in the October 8, 2014 email, the employee was required to confirm his or her identify by entering the last five digits of the employee's employee identification number. Ex. 1: Cossalter Decl., ¶ 13. The employee then went through a presentation which explained Ecolab's EARR program in detail and explained the Arbitration Agreement. *Id.* at ¶ 14 and Ex. 1.6. Specifically, slide 13 of the training module titled "Ecolab Consent to Proceed Electronically" asked employees to read and agree to the Ecolab Consent to Proceed Electronically document. *Id.* at ¶ 15. Employees viewed that document by clicking on the button on slide 14 of the training module titled "Consent to Proceed Electronically." *Id.* Clicking on that button caused a copy of the Ecolab Consent to Proceed Electronically agreement to appear on the screen. *Id.*

After being given the opportunity to read the Consent to Proceed Electronically agreement, Employees were asked to agree to proceed electronically:

> "I UNDERSTAND THAT BY CLICKING THIS "AGREE" BUTTON, I AM ELECTRONICALLY SIGNING THE "CONSENT TO PROCEED ELECTRONICALLY" DOCUMENT."

Ex. 1: Cossalter Decl., ¶ 16. Employees entered into the Consent to Proceed Electronically agreement by clicking the "Agree" button on slide 14. *Id.* at ¶ 17. After clicking "Agree", a green arrow appeared that invited the employee to proceed to the next part of the training module, starting on slide 15. *Id.* If an employee did not agree to proceed electronically, the course would end at

slide 14 and the employee was directed to contact his or her Human Resources representative to sign a hard copy of the Arbitration Agreement. *Id.* at ¶ 18.

 After agreeing to proceed electronically, the employee was invited on slide 15 to read the Arbitration Agreement. *Id.* at ¶ 19. Slide 15 also referred the employee to additional material sent to his or her home and information available at INSIDE.Ecolab.com/EARR. *Id.* Slide 15 also invited employees to contact Human Resources if they had questions. *Id.* Employees were prompted to read the Arbitration Agreement by clicking the button on slide 16 titled "Mediation and Arbitration Agreement." *Id.* at ¶ 20. Clicking on that button caused a copy of the Ecolab Mediation and Arbitration Agreement to appear on the screen. *Id.* After being given the opportunity to read the Arbitration Agreement, employees were asked to agree with this statement:

> "I READ, UNDERSTAND, AND ACCEPT THE TERMS OF THE MEDIATION AND ARBITRATION AGREEMENT."

Ex. 1: Cossalter Decl., ¶ 21. If the employee agreed to the terms of the Arbitration Agreement, he or she was directed to click the "Agree" button on page 16 of the online training module, evidencing the employee's electronic signature. *Id.* at ¶ 22.

 If an employee clicked the "Agree" button, the employee then received the message on slide 17 of the training module confirming that he or she had completed the EARR training and had electronically signed the Ecolab Consent to Proceed Electronically document and the Mediation and Arbitration Agreement. *Id.* at ¶ 23. That slide also informed the employee that he or she would receive an email confirmation shortly and that the employee could continue to the next slide to print a certificate of completion. *Id.* When the employee entered into the Arbitration Agreement, the system automatically generated an email confirming the agreement. *Id.* at ¶ 24.

The system also reported the completion of the training in the on-line training database described above. *Id.*

On October 13, 2014 at 1:21 p.m., an email was sent to Moore confirming that she entered into the Arbitration Agreement. Ex. 1: Cossalter Decl., ¶ 25 and Ex. 1.7. This email would not have been sent to her unless she had clicked the "Agree" button indicating she agreed to the Arbitration Agreement. *Id.* Slide 18 allowed the employee to click on the button titled "Click to print and sign for your records" which would generate a certificate that the employee could sign and keep in his or her records. *Id.* at ¶ 26.

**B.     Moore Violated the Arbitration Agreement When She Filed this Action.**

On July 24, 2019, Moore filed the present action alleging claims for disability discrimination and retaliatory discharge arising out of her employment with Ecolab. *See generally* Complaint, ECF No. 1. However, Moore's claims are subject to the Arbitration Agreement. That agreement requires Moore and Ecolab to arbitrate claims against each other instead of bringing them in court: "Neither the Company nor its present and former Associates may commence an action in court concerning a Dispute covered by the Agreement." Ex. 1: Cossalter Decl., Ex. 1.7. Under the Agreement, the term "Dispute" is defined, in part, as:

> "any and all claims or controversies alleging violations of federal, state, local or common law between an Associate and the Company (and vice versa) arising out of or in any way related to the application for employment, employment or cessation of employment with the Company, including all previously unasserted claims prior to the date of this Agreement . . ."

*Id.* The definition of "Dispute" also expressly includes claims, demands, or actions under the Americans with Disabilities Act of 1990, and for employment discrimination and retaliation under federal and state law. *Id.* The Agreement sets forth rules and procedures for the arbitration and

6

provides that the arbitration will be conducted in accordance with the employment arbitration rules of the American Arbitration Association ("AAA"). *Id.*

### C. Moore Refuses to Arbitrate Her Claims.

On July 30, 2019, Ecolab attorney Dana Elfvin ("Elfvin") wrote an email to counsel for Moore, requesting that Moore dismiss this action in compliance with the Arbitration Agreement. (Ex. 2: Rocks Decl., ¶ 5 and Ex. 2.1). Elfvin included a copy of the October 13, 2014 email from Ecolab to Moore confirming she had entered into the Arbitration Agreement, documents from the motion to compel arbitration in *Patton v. Ecolab Inc.*, 18-cv-1590 (N.D. Dist. Ill.) based on the same arbitration agreement, and Judge Blakey's order granting Ecolab's motion and Patton's motion for voluntary dismissal. *Id.* Ecolab requested that Moore dismiss this action by August 5, 2019 so that it would not incur the expense of drafting this Motion. *Id.* On the same day, Moore's attorney, Julie Herrera ("Herrera") wrote that she would present the material to Moore. Ex. 2: Rocks Decl., ¶ 5 and Ex. 2.2.

On August 5, 2019, Herrera responded, stating that Ecolab should demand arbitration and the parties should file a stipulation to dismiss. *Id.* Herrera did not object to the validity of the Arbitration Agreement in that email. On August 6, 2019, Ecolab attorney Patrick Rocks ("Rocks") wrote an email to Herrera explaining that because Moore, not Ecolab, was asserting the claims alleged in this action, it was Moore's obligation to file a demand for arbitration. *Id.* Herrera responded, "How about a joint request to the AAA, then?" *Id.* Rocks responded by explaining that according to the Arbitration Agreement and AAA procedures, arbitration begins when one party files a demand that includes a statement of the claim, the amount in controversy and remedies sought from the other party. Rocks also explained that because Ecolab was not making a claim against Moore, Ecolab could not file a joint demand, but that Moore could represent in her demand

that Ecolab did not object to proceeding in arbitration and did not object to the AAA as the proper forum. *Id.*

Herrera responded with a new question: "Do you have an agreement to arbitrate signed by her?" *Id.* In response, Rocks asked whether Moore was disputing that she had entered into the Arbitration Agreement and stated that seemed unlikely because Moore participated in the training program and received the October 13, 2014 email confirming she had entered into the agreement. *Id.* Herrera responded, "She does not remember whether she signed an agreement to arbitrate." But Herrera agreed with Rocks that Moore's "electronic acceptance of the agreement is as valid as if she had signed a copy of it by hand." *Id.*

On August 8, 2019, Rocks sent a responsive email that included emails sent to Moore's Ecolab email account about the EARR training session and a narrative explanation of the on-line program Moore participated in on October 13, 2014, including a description of information provided to Moore in the training program and the electronic buttons she clicked on to affirm that she agreed to proceed electronically and agreed to the Arbitration Agreement. Ex. 2: Rocks Decl., ¶ 5 and Ex. 2.3. Rocks wrote specifically that Moore agreed to arbitration when she clicked the "Agree" button on slide 16 of the presentation, and that slide 17 informed her she had entered into the agreement and she shortly would receive an email confirmation. *Id.*

Rocks also provided a copy of a report showing Moore had completed the training program and another copy of the October 13, 2014 email to Moore's Ecolab email account confirming she entered into the Arbitration Agreement. *Id.* Rocks also stated that Ecolab did not understand Moore to be claiming the October 13, 2014 email was incorrect or sent in error and again asked her to submit her claims to arbitration.

Herrera responded, questioning whether Moore would have received the October 13, 2014 confirmation email only if she had agreed to arbitration. Ex. 2: Rocks Decl., ¶ 5 and Ex. 2.4. Herrera, however, did not claim the October 13, 2014 email was incorrect or sent to Moore in error. Instead, she asserted that Rocks' email did not answer her question about a signed copy of the agreement. *Id.* Rocks responded, reiterating that Moore entered into the agreement when she clicked on the "Agree" button during the on-line training session and that it was clearly established such agreements are valid and enforceable. *Id.* On August 9, 2019, Herrera wrote, "You will need to file a motion." *Id.*

In summary, despite Ecolab's efforts to refresh Moore's recollection that she entered into the Arbitration Agreement and evidence showing Moore agreed to arbitration when she clicked on the "Agree" button during the October 13, 2014 training session, Moore refuses to present her claims to the AAA for arbitration in violation of the promises she made and the consideration she accepted when she entered into the Arbitration Agreement. Moore's refusal to arbitrate her claims necessitated the filing of this motion.

## III. <u>ARGUMENT</u>

### A. **Federal Law Compels Arbitration of Moore's Claims.**

The Court should compel Moore to submit to the binding arbitration. The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, mandates enforcement of valid, written arbitration agreements and authorizes the court to compel arbitration as provided in the agreement between the parties. 9 U.S.C. § 1-4; *see also*, *e.g.*, *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 733 (7th Cir. 2002) (affirming order compelling arbitration of employment claims pursuant to employee's agreement to arbitrate).

Interpreting the FAA, the Supreme Court has repeatedly stated there is "'a liberal federal policy favoring arbitration agreements.'" *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669

(2012) (*quoting Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U. S. 1, 24 (1983)). Because arbitration is a highly favored means of settling disputes, arbitration agreements "must be 'rigorously enforced.'" *Perry v. Thomas*, 482 U.S. 483, 490 (1987). The Supreme Court "requires courts to enforce agreements to arbitrate according to their terms … even when the claims at issue are federal statutory claims, unless the FAA's mandate has been 'overridden by a contrary congressional command.'" *Id.* (*citing Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985) *and quoting Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987)).

Under the FAA, the court must grant a motion to compel arbitration if (1) there is a written agreement to arbitrate, (2) the dispute is within the scope of the arbitration agreement, and (3) the plaintiff refused to arbitrate. *Zurich Am. Ins. Co. v. Watts Indus.*, 417 F.3d 682, 687 (7th Cir. 2005). As is explained above, all three of these conditions have been fulfilled here.

Moore agreed to arbitrate the claims in her Complaint when she completed Ecolab's EARR training and electronically signed the Agreement by clicking "Agree." Consistent with the liberal federal policy favoring enforcement of arbitration agreements, it is well-settled that agreements to arbitrate claims in the employment context are enforceable. *See*, *e.g.*, *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123 (2001) ("We have been clear in rejecting the supposition that the advantages of the arbitration process somehow disappear when transferred to the employment context . . . . Arbitration agreements allow parties to avoid the costs of litigation, a benefit that may be of particular importance in employment litigation, which often involves smaller sums of money than disputes concerning commercial contracts.") (citations omitted).

Moore's claims fall squarely within the scope of the Arbitration Agreement, which expressly states that disability discrimination and retaliation claims (among other employment related disputes) are subject to arbitration and may not be commenced in court. Yet she has refused

10

to submit her claims to arbitration even after being presented with a copy of the email confirming her acceptance of the Arbitration Agreement. A litigant may not refuse to arbitrate a dispute within the scope of a valid agreement to arbitrate. Indeed, in such circumstances, a judicial order compelling arbitration is mandatory: "the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that the district court **shall** direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc.,* 470 U.S. at 218 (emphasis in original). Further, the "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000). Moore cannot meet this burden here, and thus the Court must compel arbitration.

**B.     This Action Should be Dismissed or, Alternatively, Stayed Pending Arbitration.**

In addition to compelling Moore to submit to binding arbitration to resolve the claims in her Complaint, the Court should dismiss or, in the alternative, stay these proceedings pending the outcome of the arbitration.

The general rule is that courts should stay proceedings when compelling arbitration. 9 U.S.C. § 3 (requiring courts to stay proceedings when one party has failed or refused to comply with a valid arbitration agreement and an order compelling arbitration is warranted). However, "there is a growing trend among district courts to dismiss a case when all of the claims alleged therein are subject to arbitration, resulting in 'a judicially-created exception to the general rule which indicates district courts may, in their discretion dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration.'" *Soucy v. Capital Management Services, L.P. et al.*, No. 14 C 5935, 2015 U.S. Dist. LEXIS 9991, *16-17 (N.D. Ill. Jan. 29, 2015) (Holderman, J.) (*citing Johnson v. Orkin, LLC,* 928 F. Supp. 2d 989, 1008-

09 (N.D. Ill. 2013) (Castillo, J.) (*quoting Green v. SuperShuttle Int'l, Inc.,* 653 F.3d 766, 769-70 (8th Cir. 2011); *see also Dental USA, Inc. v. Beak & Bumper, LLC*, No. 13 C 2581, 2013 U.S. Dist. LEXIS 98882, *7 (N.D. Ill. July 16, 2013) (Kendall, J.). "Dismissing rather than staying is sensible because there is 'nothing left for the court to decide unless and until a party seeks confirmation of or challenges the arbitrators' award' . . . in which case, the complaint would look entirely different from the current Complaint, because the allegations would have to target the arbitration award." *HTG Capital Partners, LLC v. Doe*, No. 15 C 02129, 2016 U.S. Dist. LEXIS 18458, *25 (N.D. Ill. Feb. 16, 2016) (Chang, J.).

Although the Seventh Circuit has yet to expressly recognize the exception to the general rule favoring a stay, it has affirmed orders dismissing actions where all claims must be arbitrated. *See*, *e.g.*, *Johnson v. Orkin*, *LLC,* 556 Fed. App'x 543, 544 (7th Cir. 2014*); Baumann v. Finish Line, Inc.*, 421 F. App'x 632, 636 (7th Cir. 2011); *Am. Int'l Specialty Lines Ins. Co. v. Elec. Data Sys. Corp.*, 347 F.3d 665, 668 (7th Cir. 2003); *McCaskill v. SCI Mgmt. Corp.*, 298 F.3d 677, 679 (7th Cir. 2002).

The facts here warrant the application of the exception because all of Moore's claims are subject to a valid and enforceable arbitration agreement. Therefore, retaining jurisdiction and staying the case would serve no purpose and would waste of judicial resources. *Johnson,* 928 F. Supp. 2d at 1009. Ecolab requests that the Court compel arbitration and then dismiss this action. In the alternative, if the Court is disinclined to dismiss this action, then Ecolab requests that the action be stayed pending arbitration. 9 U.S.C. § 3. Additionally, Ecolab requests that all pending deadlines, including the September 16, 2019 deadline for the parties to submit their initial MIDP responses, be stayed pending a decision on this motion.

**IV.** **CONCLUSION**

For the reasons set forth herein, Ecolab respectfully requests that this Honorable Court issue an order: (1) compelling arbitration; (2) dismissing this action (or, in the alternative, staying this action); (3) staying the September 16, 2019 deadline to for the parties to submit their initial MIDP responses and all other deadlines in this matter, and (4) awarding such other relief as deemed appropriate in the circumstances.

Dated: August 15, 2019                    Respectfully submitted,

                                          **ECOLAB INC.**


                                          */s/ Patrick J. Rocks*
                                  By:     Patrick J. Rocks
                                          Dana S. Elfvin
                                          Jackson Lewis P.C.
                                          150 North Michigan Avenue #2500
                                          Chicago, IL 60601
                                          (312) 787-4949
                                          patrick.rocks@jacksonlewis.com
                                          dana.elfvin@jacksonlewis.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that on August 15, 2019, he caused a copy of the foregoing ***Defendant's Motion to Compel Arbitration and Dismiss, or in the Alternative, Stay Proceedings*** to be filed with the Court by electronic filing protocols, and that same will therefore be electronically served upon all attorneys and parties of record registered with the Court's ECF/CM system.

By: *<u>/s/ Patrick J. Rocks</u>*

# EXHIBIT
# 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **AMBER MOORE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:19-cv- 04969** |
| | ) | |
| **ECOLAB INC.,** | ) | **Honorable Virginia M. Kendall** |
| | ) | |
| **Defendant.** | ) | **Magistrate Jeffrey Cummings** |
| | ) | |
| | ) | **Jury Demanded** |
| | ) | |

**DECLARATION OF STEFANIE COSSALTER**

I, Stefanie Cossalter, hereby declare as follows:

1.  I submit this declaration in support of the Motion to Dismiss or Compel Arbitration and Stay Proceedings filed by Defendant Ecolab Inc. ("Ecolab" or "Defendant") in this action.

2.  I am over the age of 18 and have personal knowledge of the contents of this declaration, and if called as a witness I could and would testify competently thereto.

3.  I am a Human Resources Representative II in the Employee Relations and Compliance department at Ecolab. In my position, I am familiar with Ecolab's practices with respect to employee agreements, specifically including arbitration agreements between Ecolab and its employees.

4.  Ecolab, through its employees, provides chemistry program and related services to the upstream and midstream oil and gas industry, refineries and petrochemical operations throughout the United States and worldwide. Ecolab also is a global leader in water, hygiene and energy technologies and services.

5.  Plaintiff Amber Moore was an employee of Ecolab in October 2014.

6.  In October 2014, Ecolab implemented a mandatory Ecolab Associate Resolution Resource ("EARR") program, which addressed dispute resolution and contained a Mediation and Arbitration Agreement ("Arbitration Agreement").

7.    Ecolab had previously worked with a third-party e-learning and training platform, Corpedia, to implement another new policy implementation for Ecolab. Because of this, Ecolab elected to use Corpedia for the implementation of its EARR program.[1]

8.    On October 3, 2014, an email announcement was sent to Ecolab employees from Laurie Marsh, Executive Vice President, Human Resources, informing them that Ecolab was introducing the EARR program. **Exhibit 1.1** is a true and correct copy of the October 3, 2014 email announcement. The email informed employees that they were required to sign the Arbitration Agreement by October 22, 2014. The email notified employees they would receive a training module about EARR, with an opportunity to sign the Arbitration Agreement, on October 8, 2014.

9.    The October 3, 2014 email also included a link to a newsletter titled "Ecolab Associate Resolution Resources (EARR) and the Mediation and Arbitration Agreement." **Exhibit 1.2** is a true and correct copy of that newsletter. The newsletter also was sent to employee's homes.

10.    On October 8, 2014, employees were sent an email containing a unique link which would permit the employee to access the Corpedia EARR training module and Arbitration Agreement. This email was sent to employees' Ecolab email accounts, for which employees created their own unique passwords that were changed regularly by each employee. The training module provided the employee the opportunity to read and sign the Arbitration Agreement electronically. **Exhibit 1.3** is a true and correct copy of the October 8, 2014 email sent to Amber Moore with her link to the EARR training module.

11.    On October 13, 2014, an email was sent to Amber Moore reminding her to use the link and password provided to her to view the training module and sign the Arbitration Agreement. **Exhibit 1.4** is a true and correct copy of that email.

12.    **Exhibit 1.5** is a true and correct copy of two screen shots from Amber Moore's on-line Ecolab training record that I obtained from accessing Ecolab's training records at True Office Learning (formerly Corpedia). This document shows that on October 13, 2014, Ms. Moore logged

---

[1] Corpedia is now known as True Office Learning.

into the EARR training module at 5:52:10 a.m. (MT) and logged off at 8:01:37 a.m. (MT). On information and belief, she did not complete the training at that time; if she had, the system would have created the confirmation email it sent to her at 1:21 p.m. (CT). She logged back into the system at 12:15:31 p.m. (MT) and completed the training at 12:21:40 p.m. (MT). The enclosed screen shots from her training record show time stamps related to her activity. The green dots indicate the training was completed. Amber Moore completed the EARR training module when she agreed to the Arbitration Agreement by clicking the Agree button, as further explained below.

13.     After the employee clicked on the link in the October 8, 2014 email, the employee was required to confirm his or her identify by entering the last five digits of the employee's employee identification number. Amber Moore's Ecolab employee identification number was 25503.

14.     After logging onto the EARR training module, the employee went through a presentation which explained Ecolab's EARR program in detail and explained the Arbitration Agreement. Attached as **Exhibit 1.6** is a true and correct paper copy of the online training module slides that were accessed through the link in the October 8 and October 13, 2014 emails.

15.     Slide 13 of the training module titled "Ecolab Consent to Proceed Electronically" asked employees to read and agree to the Ecolab Consent to Proceed Electronically document. Employees viewed that document by clicking on the button on slide 14 of the training module titled "Consent to Proceed Electronically." Clicking on that button caused a copy of the Ecolab Consent to Proceed Electronically agreement to appear on the screen.

16.     After being given the opportunity to read the Consent to Proceed Electronically agreement, Employees were asked to agree to proceed electronically:

"I UNDERSTAND THAT BY CLICKING THIS "AGREE" BUTTON, I AM ELECTRONICALLY SIGNING THE "CONSENT TO PROCEED ELECTRONICALLY" DOCUMENT."

17.     Employees entered into the Consent to Proceed Electronically agreement by clicking the "Agree" button on slide 14. After clicking "Agree", a green arrow appeared that invited the employee to proceed to the next part of the training module, starting on slide 15.

18.     If an employee did not agree to proceed electronically, the course would end at slide 14 and the employee was directed to contact his or her Human Resources representative to sign a hard copy of the Arbitration Agreement.

19.     After agreeing to proceed electronically, the employee was invited on slide 15 to read the Arbitration Agreement. Slide 15 also referred the employee to additional material sent to his or her home and information available at INSIDE.Ecolab.com/EARR. Slide 15 also invited employees to contact Human Resources if they had questions.

20.     Employees were prompted to read the Arbitration Agreement by clicking the button on slide 16 titled "Mediation and Arbitration Agreement." Clicking on that button caused a copy of the Ecolab Mediation and Arbitration Agreement to appear on the screen.

21.     After being given the opportunity to read the Arbitration Agreement, employees were asked to agree with this statement:

"I READ, UNDERSTAND, AND ACCEPT THE TERMS OF THE MEDIATION AND ARBITRATION AGREEMENT."

22.     If the employee agreed to the terms of the Arbitration Agreement, he or she was directed to click the "Agree" button on slide 16 of the online training module, evidencing the employee's electronic signature.

23.     If an employee clicked the "Agree" button, the employee then received the message on slide 17 of the training module confirming that he or she had completed the EARR training and had electronically signed the Ecolab Consent to Proceed Electronically document and the Mediation and Arbitration Agreement. That slide also informed the employee that he or she would receive an email confirmation shortly and that the employee could continue to the next slide to print a certificate of completion.

24.     When the employee entered into the Arbitration Agreement, the system automatically generated an email confirming the agreement. The system also reported the completion of the training in the on-line training database described above.

25.     **Exhibit 1.7** is a true and correct copy of the email to Amber Moore's Ecolab email account dated October 13, 2014 at 1:21 p.m. confirming that she had entered into the Arbitration Agreement. This email would not have been sent to her unless she had clicked the "Agree" button indicating she was entering in to the agreement.

26.     Slide 18 allowed the employee to click on the button titled "Click to print and sign for your records" which would generate a certificate that the employee could sign and keep in his or her records.

27.     The EARR program was developed and implemented as a regular part of Ecolab's business and human resources activities. The documents attached as exhibits to this declaration (1) were made at or near the times indicated on the documents or in this declaration by individuals with knowledge of the content of the documents, (2) were created as part of the implementation of the EARR program and (3) were retained in the regular course of the administration of the EARR program and Ecolab's email retention practices.

28.     The exhibits referred to in this declaration are true and correct copies of those documents.

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this _15th_ day of August 2019.


By:     _Stefanie L Cossalter_
           STEFANIE COSSALTER


4841-0888-8736, v. 2

5

# EXHIBIT 1.1

| | |
|---|---|
| **From:** | Global Communications <GlobalCommunications@ecolab.com> |
| **Sent:** | Friday, October 03, 2014 12:58 PM |
| **Subject:** | Resolution Resources and Mediation and Arbitration Agreement |

At Ecolab, we are committed to protecting and maintaining a positive work environment for all associates – and to helping you resolve any workplace issues that may arise. As part of this commitment, Ecolab is introducing a better way to resolve workplace concerns: Ecolab Associate Resolution Resources (EARR) and a new Mediation and Arbitration Agreement. You are required to sign this Agreement by October 22, 2014.

Prior to signing the Agreement, you will have multiple opportunities to learn more about EARR and review the Agreement. These opportunities include:

1. **A <u>video message</u> from Chairman and CEO Doug Baker.**

2. **A newsletter – available <u>electronically</u> and mailed to your home address.**

3. **An online training module – watch your email inbox on October 8 for details.**

In addition to helping you learn about the benefits of EARR as well as mediation and arbitration, the online training module provides you the opportunity to sign the Agreement electronically. The training and signing should take 15 minutes or less. Please note associates who are paid hourly will be compensated for the time spent on the signing process.

We believe these changes will help us maintain a positive and ethical workplace where we work together to resolve concerns – and we do what's right, what's fair and what's honest. Thank you for all you do to help us fulfill our purpose.

Sincerely,

Laurie Marsh
Executive Vice President, Human Resources

James J. Seifert
Executive Vice President, General Counsel and Secretary

# EXHIBIT 1.2

 **EARR** Ecolab Associate Resolution Resources

 **ECOLAB**®



> # Ecolab Associate Resolution Resources (EARR) and the Mediation and Arbitration Agreement

## A Better Way to Resolve Workplace Concerns

Ecolab is committed to providing and maintaining a positive work environment for all associates – and to helping you resolve any workplace concerns or issues that may arise.

To ensure we are using best practices in resolving workplace issues, we recently evaluated our approach and made some important improvements:

• We are adding a new resource – an **Ombudsperson (Ombuds)**, who joins Ecolab's existing resolution support options such as your manager and your HR representative. The Ombuds is a confidential, neutral and independent professional who can help you choose the appropriate course of action to resolve your concern.

• Together, these existing and new support resources are called **Ecolab Associate Resolution Resources (EARR)**. EARR provides U.S. associates the **opportunity to raise issues** in the workplace and then **work together** to find a positive resolution.

• Ecolab is moving to mediation and arbitration – a common practice at many leading companies – as a better means to resolve workplace disputes. Ecolab already agrees to use mediation and arbitration with many customers and suppliers. Now, Ecolab U.S. associates have a new requirement to use mediation and/or arbitration to resolve legal disputes rather than file a civil lawsuit against Ecolab. Ecolab also agrees to use mediation and/or arbitration rather than bring a legal claim against an associate. These options allow you to receive the same remedies/awards available in a court action on an individual basis without the high costs of a lawsuit. **You will need to sign the Mediation and Arbitration Agreement by October 22, 2014, as a condition of your continued employment.**

Read on to learn more about how EARR – including the new Ombuds – and mediation and arbitration can work for you.

## WHAT'S INSIDE:

• About EARR ...................................................2
• Why Are Mediation and Arbitration Better Alternatives?..............................2
• Mediation and Arbitration Agreement ...3
• What You Need to Know ............................4
• Why Is Ecolab Making This Change?........4
• You Matter – Your Resources....................5
• Many Options for Resolving Workplace Concerns Together.....................................5

**YOU MUST READ AND SIGN THE MEDIATION AND ARBITRATION AGREEMENT BY WEDNESDAY, OCTOBER 22, 2014.**

See page 2 for more details.

> You matter at Ecolab, and Ecolab is committed to maintaining a positive and ethical workplace for you.
>
> Our goal is to move forward together in efficiently resolving disputes.

❯ Mediation and arbitration save both time *and* money – for you and Ecolab.

# ❯ About EARR

If an issue arises at work, you have many options to successfully resolve it through **EARR**:

- Your manager – knows you and can help you find solutions, including identifying other resources to help.
- Your HR representative – knows Ecolab's policies and procedures and is available to help you find solutions.
- The Employee Assistance Program, Code of Conduct Helpline and the Ombuds – help you identify an appropriate action to find a solution.

Your options also include **external resources** to help you work with others to find resolution (mediation) or hear all sides and determine a resolution (arbitration).

# ❯ Why Are Mediation and Arbitration Better Alternatives?

If workplace disputes aren't resolved internally, mediation and arbitration (external resources) offer **important benefits over legal action**. In fact, these alternative methods to resolve disputes are so effective, they are often mandated by judges during legal proceedings.



### How do I sign the Mediation and Arbitration Agreement?

**Associates with email access:**
Watch for an email in early October from Ecolab HR Communications with a link to an education module, access to more information and a way to sign the Agreement online.

**Associates without email access:**
Attend a local on-site meeting between October 8-22, 2014, to get an overview of the program, watch an education module, ask questions and sign the Agreement.

| MEDIATION/ARBITRATION | LEGAL ACTION |
|---|---|
| Resolution within weeks or months | Resolution within months or years |
| You and Ecolab choose an independent mediator/arbitrator from a list provided by the American Arbitration Association | A judge is assigned to you |
| Lower legal fees for associates* and Ecolab | Higher legal fees for associates* and Ecolab |
| Cost savings mean less out of your pocket/settlement. Also, Ecolab is able to invest in more constructive outcomes, such as innovation, expanding the business and developing associates | Higher costs come out of your pocket/settlement, and Ecolab spends more on legal fees and less on the business and associates |

\* For those who file for mediation or arbitration, the company will pay up to $500, regardless of outcome, to help cover the cost of an associate's consultation with legal counsel. You are responsible for any additional fees for attorneys, expert witnesses, etc., should you choose to hire them.

# ❯ Mediation and Arbitration Agreement

The Mediation and Arbitration Agreement means Ecolab U.S. associates (except associates already covered under a collective bargaining agreement) must use mediation and/or arbitration to resolve legal disputes rather than file a civil or class action lawsuit against Ecolab or any of its associates.

**Mediation and arbitration continue to protect your most important rights:**

- **You still can be heard by an independent, outside party.** Both mediation and arbitration provide you with support by someone who is not employed by Ecolab.

- **You still can receive the same remedies/awards as in a civil court action brought by you individually.** Mediation and arbitration allow for monetary damages, just like civil or class action litigation.

- **You still can file a criminal complaint.** The Mediation and Arbitration Agreement applies to civil matters only.

- **You still can file complaints with certain agencies, such as the Equal Employment Opportunity Commission (EEOC).** Complaints with the EEOC are not considered legal action and therefore may be filed.

- **You still can act as a whistleblower if you see something unethical or illegal.** It is important that all Ecolab associates act both ethically and legally, and we encourage you to call out these actions if you see them.

## What issues can EARR help me resolve?

- Coworker conflicts
- Disciplinary or supervisory issues
- Discrimination
- Harassment
- Misconduct or ethical violations
- Retaliation or mistreatment
- Safety concerns
- Compensation concerns
- Wrongful discharge
- And more

## Is there a cost to use EARR?

EARR support is available at no cost to you. In the case of a legal dispute that leads you to consider the external options of mediation or arbitration, Ecolab covers the mediator's or arbitrator's fees. Plus, you participate in choosing your independent mediator or arbitrator from a list provided by the American Arbitration Association (AAA). If you decide to pursue arbitration and file a formal claim with the AAA, you will be responsible for any fees you are charged for obtaining legal counsel, expert witness services, etc. For those who file for mediation or arbitration, the company will pay up to $500, regardless of outcome, to help cover the cost of an associate's consultation with legal counsel.



To acknowledge your acceptance, you must sign a binding Mediation and Arbitration Agreement by October 22, 2014. Signing the Agreement is now a condition of employment. If you do not sign the Agreement, you are choosing to end your employment with Ecolab.

# › What You Need to Know

### What is the Mediation and Arbitration Agreement?

The Agreement requires both Ecolab and associates to use mediation or arbitration to resolve legal disputes rather than filing a civil or class action lawsuit against each other. This requirement will be formalized through a binding Agreement, which Ecolab U.S. associates (except associates already covered under a collective bargaining agreement) and new hires will be required to sign.

### How am I affected by signing the Mediation and Arbitration Agreement?

The Agreement does not take away your rights to be heard by an outside party (arbitrator), receive the same remedies/damages as in a civil court action brought by you individually, or file EEOC complaints, criminal complaints or whistleblower claims. In addition, you may get a faster and equal or more satisfactory resolution through mediation or arbitration.

### What does the Agreement say?

Signing the Mediation and Arbitration Agreement means you agree to use mediation or arbitration to resolve legal disputes rather than filing a civil or class action lawsuit against Ecolab. If you attempt to file a lawsuit against Ecolab or any of its associates, Ecolab will ask the agency or court to stay or dismiss the matter and refer it to arbitration.

### How do I sign the Mediation and Arbitration Agreement?

· **Associates with email access** will receive an email in early October from HR Communications with a link to access a short education module and sign the Agreement online. Employees with questions can access more information on **INSIDE.Ecolab.com/EARR** or contact HR.

· **Associates without email access** will be invited to on-site meetings to get an overview of the program, watch an education module, ask questions and sign the Agreement after they have fully reviewed the Agreement.

### Why do I have two weeks to sign?

We believe it is equitable for all U.S. associates to sign within the same time frame. This approach also helps Ecolab manage the logistics of this change – and it is consistent with how we introduce other HR initiatives or offerings.

### What happens if I don't sign the Mediation and Arbitration Agreement?

Because the Agreement is now a condition of employment, if you don't sign it by the deadline, you are choosing to end your employment with Ecolab.

# › Why Is Ecolab Making This Change?

These alternative methods to resolving legal issues are much more likely to result in cost-effective, timely and positive outcomes for both associates and the company. Lawsuits can typically take months or even years to resolve. Additionally, legal fees can be significant – for you and for Ecolab. EARR offers you many support channels both inside and outside of Ecolab for a resolution that is timely, equitable and non-retaliatory. By working together, we hope to reach a beneficial outcome for you, your coworkers and Ecolab. Resolving legal disputes in this manner also enables Ecolab to direct more company resources toward constructive outcomes – such as innovation, expanding our business, and hiring and developing associates. **In fact, Ecolab already agrees to use arbitration or mediation to manage any disputes with many customers and suppliers.**

### A common practice

Mediation and arbitration agreements are becoming more and more common. Many other large corporations have implemented them, including:

· American Express
· Baker Hughes
· Brinker Restaurant Corp.
· Cheesecake Factory Restaurants, LLC
· Chevron
· Cintas
· Citibank
· Darden Restaurants
· General Electric
· Murphy Oil Corporation
· Orkin
· Rockwell
· Sealed Air/Diversey
· Terminix
· Unilever U.S.



## ❯ You Matter – Your Resources

You matter. That's why Ecolab wants to make sure you have the opportunity and ability to voice any workplace concerns openly and directly. It's also why Ecolab is introducing new support channels for you as part of EARR. See the next page for more information on these resources.

## ❯ Many Options for Resolving Workplace Concerns Together



You have access to all internal and external resources when you have a workplace concern. Our goal is to find ways for you and Ecolab to work together to find solutions.

**If you are uncertain about which resource to use, we recommend visiting with the Ombuds, who will listen to your concern and provide you with options for using the other resources.**

When you have a workplace- or employment-related concern, you can reach out to these existing resources:

❯ Three sample scenarios of using EARR are shown on the following page.

| EXISTING RESOURCES AND PROGRAMS | | | |
|---|---|---|---|
| **YOUR MANAGER** | **YOUR HR REPRESENTATIVE** | **EMPLOYEE ASSISTANCE PROGRAM (EAP)** | **CODE OF CONDUCT HELPLINE** |
| Your manager is someone who knows you and understands what you do. He or she may be able to help resolve an issue right away or may point you to another resource for further help. | Your HR representative understands Ecolab's policies and procedures and can help find answers. He or she may help you resolve your issue or may point you to another resource for further help. | The EAP is an external, confidential resource available to help you with a wide array of issues. For workplace concerns, an EAP representative is available to listen and help you work through how to respond to or consider ways to resolve the concern. **Available 24/7 at: 1.888.371.1125 www.cignabehavioral.com (employer ID: ecolab)** | Ecolab's Code of Conduct training provides you with what we expect of ALL associates about working safely, ethically and honestly as well as acting in the best interests of the company. The Code of Conduct Helpline is available to you to report these types of concerns or violations. **Answering service available 24/7 at: 1.800.299.9442** |

You also have these *new* resources for support:

| *NEW* RESOURCES | | |
|---|---|---|
| **OMBUDSPERSON** | **MEDIATION (through an external AAA mediator)** | **ARBITRATION (through an external AAA arbitrator)** |
| The Ombuds is a confidential, neutral and independent professional who is familiar with Ecolab and will listen and help you clarify your issue. The Ombuds will support you in identifying an appropriate course of action consistent with Ecolab's policies and procedures, and the nature of the issue. The Ombuds also can escalate an issue with your permission or coach you to take the issue to another resource. Visit **INSIDE.Ecolab.com/EARR** for information about scheduling an appointment. | Mediation is the use of a certified, third-party mediator from the American Arbitration Association (AAA) who will listen and work with you and the involved parties to reach a compromise on an issue. A mediator assists the parties in resolving a dispute, which can result in a binding decision, but only if both parties agree. | Arbitration involves a professional, independent arbitrator from the American Arbitration Association (AAA) who will listen to all parties and determine the outcome of a dispute, providing a final and binding decision to resolve an issue. AAA is a not-for-profit organization with offices throughout the U.S. AAA has a long history and experience in the field of alternative resolution, providing services to individuals and organizations who wish to resolve conflicts out of court. To learn more, go to **www.adr.org**. |



### Scenario #1

An associate has an issue with a recent paycheck. The associate doesn't believe the paycheck includes all of the commissions earned last month.

This concern is best addressed by using existing resources, such as your manager or HR representative. Your manager and/or HR representative are able to work together with you to research your pay issue to help you understand how you were paid and, if a mistake has been made, get you a timely resolution.



### Scenario #2

Coworkers are telling inappropriate jokes that are making an associate uncomfortable. The associate has asked the coworkers to stop telling inappropriate jokes, but the jokes continue to be told.

In this scenario, you can speak to your manager or HR representative to share your concern and work together to find a resolution. You also can talk to an EAP representative who is available to listen and help you consider ways to resolve the concern. This behavior also goes against Ecolab's Code of Conduct, and the Code of Conduct Helpline is another available resource for you.

If you aren't sure where to start, you also can speak to the Ombuds for assistance. The Ombuds understands Ecolab's policies, systems and personnel and will work with you to help you find the best resolution for your situation.

### Scenario #3

An associate feels a manager is not assigning him/her high-impact projects and believes it is because of past performance concerns. The associate has spent the last year working diligently to improve performance and has been receiving positive feedback from peers and customers. The associate has attempted to discuss the concern with the manager and with the HR representative, but the associate still feels the concern is not being taken seriously.

If you feel your concern is not being addressed or resolved, you have multiple options to work together with Ecolab to find resolution. One starting place might be to speak to the Ombuds about how to best seek resolution of your concern. The Ombuds may help you identify other EARR resources. Or the Ombuds might help you prepare for a conversation with HR or your manager to discuss your performance and what can be done to assign projects that will be impactful to you.



Worldwide Headquarters
370 Wabasha Street N  St. Paul, MN 55102

❯ Introducing Ecolab Associate Resolution Resources (EARR) – a new initiative to support Ecolab U.S. associates.

This newsletter provides important overview information about Ecolab Associate Resolution Resources (EARR), available to Ecolab U.S. associates (except associates already covered under a collective bargaining agreement) beginning in October 2014 (terms of the Mediation and Arbitration Agreement control).

©2014 Ecolab USA Inc.  All rights reserved.





YOU MUST TAKE ACTION BY OCTOBER 22, 2014.

Learn more inside.

# EXHIBIT
# 1.3

| | |
|---|---|
| **From:** | HR Communications <HRCommunicationsNA@ecolab.com> |
| **Sent:** | Wednesday, October 8, 2014 4:52 AM |
| **To:** | amber.moore@ecolab.com |
| **Subject:** | Action required: EARR and Mediation and Arbitration Agreement |

At Ecolab, we are committed to protecting and maintaining a positive work environment for all associates — and to helping you resolve any workplace issues that may arise. As part of this commitment, Ecolab is introducing a better way to resolve workplace concerns: Ecolab Associate Resolution Resources (EARR) and a new Mediation and Arbitration Agreement. You are required to sign this Agreement by October 22, 2014, as a condition of continued employment.

Please use the link and password below, which will direct you to view an EARR online training module and sign the Mediation and Arbitration Agreement electronically. This web-based training program will help you understand EARR and the related Agreement. You should be able to complete the training within 15 minutes or less.

LOGIN INSTRUCTIONS

Please DO NOT FORWARD, as the email and password provided are unique to you.

This course is compatible for use with:
- PCs
- iPads/Microsoft Tablets
- iPhones (only)

The course requires you to open and read two legal Agreements that will appear as pop-up PDFs on a PC or a new browser window on a tablet or iPhone. After reading each Agreement, please be sure to close the PDF or browser window. Do not close or exit your main web browser, or the entire course will close without saving your progress and you will need to restart the course from beginning

1. Click http://www.corpedia.com/log.asp?euid=sKa5s8dB4Q%21%21 and enter the password: train

2. Click the green Start button next to The Ecolab Associate Resolution Resources (EARR) and Mediation and Arbitration Agreement course

For user support and technical assistance, please see below.

Within two weeks of receiving this email (by October 22), please complete the online training module and sign the Mediation and Arbitration Agreement.

We believe these changes will help us maintain a positive and ethical workplace where we work together to resolve concerns – and we do what's right, what's fair and what's honest. Thank you for all you do to help us fulfill our purpose.

Sincerely,
Laurie Marsh
Executive Vice President, Human Resources

James J. Seifert
Executive Vice President, General Counsel and Secretary

Please review these instructions to ensure you can successfully launch the training course on your computer.

MINIMUM PC REQUIREMENTS
Microsoft Windows
- Windows XP (32 bit)

- Windows 7 (32 bit and 64 bit)
- 2.33Ghz or faster x86-compatible processor, Intel Atom 1.6Ghz or faster processor for netbooks
- 256MB of RAM (1GB of RAM recommended for netbooks)
- 128MB of graphics memory
- 16 bit (thousands of colors) display with 800 x 600 resolution or better
- Internet Explorer 8, 9, 10 or 11
- Mozilla Firefox 4 or later
- Google Chrome 10 or later
- Adobe Flash 10 or later (not required if using Internet Explorer 9 or later or Google Chrome)
- Sound card and speakers or headphones

Ecolab supplied PCs should meet these requirements.

iPad*
- iOS 6 or later
- iPad or iPad Mini
- Safari

* Tablet support is specifically for courseware on the Cascade platform. All users, including those on tablets, must maintain a constant, uninterrupted high-speed Internet connection to the content server and learning management system. Additional application or software installation may be required for learner tracking to be recorded.

LOGGING ON TO THE COURSE
For best results, clear your browser's cache before clicking on the course link.
After clicking on the link, you will be prompted to enter the password supplied in this email. Click the green "Start" button next to the course you want to launch. If you pause or stop the course, the course will bookmark so you can resume where you left off.

ISSUES WITH THE COURSE
As with any application delivered over the Internet, you may experience performance interruptions while taking a course.

If you come to a screen that will not load or you are unable to advance, follow these steps:
• Exit the course
• Clear your browser's cache
• Restart the course
If you continue to have the same issue, wait for a period of time and try again. If the problem persists, send an email to support@corpedia.com.

UPDATING FLASH
If you need to update the version of Flash on your Ecolab supplied PC, you may be able to do that yourself by installing a program from the network if you have admin rights on your PC.

• For Win 7 machines: Go to Control Panel, click Update Programs and click on Adobe Flash 11.6 ENU – Install.
• For XP Machines: Go to Control Panel, click Run Advertised Programs and click on Adobe Flash 11.6 ENU – Install.

If you do not have admin rights on your PC, please contact either your local Ecolab or Nalco IT Service Desk using your standard process and local email address or telephone number.

The EARR section of INSIDE.Ecolab.com provides important overview information about Ecolab Associate Resolution Resources (EARR) and the Mediation and Arbitration Agreement for Ecolab U.S. associates (except associates covered under a collective bargaining agreement) beginning in 2014 (terms of the Arbitration Agreement control).
CONFIDENTIALITY NOTICE: This e-mail communication and any attachments may contain proprietary and privileged information for the use of the designated recipients named above. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

# EXHIBIT
# 1.4

| | |
|---|---|
| **From:** | HR Communications <HRCommunicationsNA@ecolab.com> |
| **Sent:** | Monday, October 13, 2014 4:28 AM |
| **To:** | amber.moore@ecolab.com |
| **Subject:** | REMINDER: Mediation and Arbitration Agreement – TIME SENSITIVE |

Amber Moore,

You recently received an email with a link to the Ecolab Associate Resolution Resources (EARR) online training module and Mediation and Arbitration Agreement. The deadline to sign the Agreement is October 22, 2014. Please use the link and password below to view the training module and to sign the Mediation and Arbitration Agreement electronically. This web-based training program will help you understand EARR and the Mediation and Arbitration Agreement. You should be able to complete the training within 15 minutes or less. After completing the training, you will be directed to the Agreement for your electronic signature.

The Mediation and Arbitration Agreement must be signed by October 22, 2014, as a condition of continued employment with Ecolab.

LOGIN INSTRUCTIONS

Please DO NOT FORWARD, as the email and password provided are unique to you.

This course is compatible for use with:
- PCs
- iPads/Microsoft Tablets
- iPhones (only)

The course requires you to open and read two legal Agreements that will appear as pop-up PDFs on a PC or a new browser window on a tablet or iPhone. After reading each Agreement, please be sure to close the PDF or browser window. Do not close or exit your main web browser, or the entire course will close without saving your progress and you will need to restart the course from beginning

1. Click http://www.corpedia.com/log.asp?euid=sKa5s8dB4Q%21%21 and enter the password: train

2. Click the green Start button next to The Ecolab Associate Resolution Resources (EARR) and Mediation and Arbitration Agreement course.

Take time now to view the module and sign the Arbitration Agreement before the October 22, 2014 deadline.

For user support and technical assistance, please see below.

Sincerely,

Laurie Marsh
Executive Vice President, Human Resources

James J. Seifert
Executive Vice President, General Counsel and Secretary

Please review these instructions to ensure you can successfully launch the training course on your computer.

MINIMUM PC REQUIREMENTS
Microsoft Windows
- Windows XP (32 bit)

- Windows 7 (32 bit and 64 bit)
- 2.33Ghz or faster x86-compatible processor, Intel Atom 1.6Ghz or faster processor for netbooks
- 256MB of RAM (1GB of RAM recommended for netbooks)
- 128MB of graphics memory
- 16 bit (thousands of colors) display with 800 x 600 resolution or better
- Internet Explorer 8, 9, 10 or 11
- Mozilla Firefox 4 or later
- Google Chrome 10 or later
- Adobe Flash 10 or later (not required if using Internet Explorer 9 or later or Google Chrome)
- Sound card and speakers or headphones

Ecolab supplied PCs should meet these requirements.

iPad*
- iOS 6 or later
- iPad or iPad Mini
- Safari

* Tablet support is specifically for courseware on the Cascade platform. All users, including those on tablets, must maintain a constant, uninterrupted high-speed Internet connection to the content server and learning management system. Additional application or software installation may be required for learner tracking to be recorded.

LOGGING ON TO THE COURSE
For best results, clear your browser's cache before clicking on the course link.
After clicking on the link, you will be prompted to enter the password supplied in this email. Click the green "Start" button next to the course you want to launch. If you pause or stop the course, the course will bookmark so you can resume where you left off.

ISSUES WITH THE COURSE
As with any application delivered over the Internet, you may experience performance interruptions while taking a course.

If you come to a screen that will not load or you are unable to advance, follow these steps:
• Exit the course
• Clear your browser's cache
• Restart the course
If you continue to have the same issue, wait for a period of time and try again. If the problem persists, send an email to support@corpedia.com.

UPDATING FLASH
If you need to update the version of Flash on your Ecolab supplied PC, you may be able to do that yourself by installing a program from the network if you have admin rights on your PC.

• For Win 7 machines: Go to Control Panel, click Update Programs and click on Adobe Flash 11.6 ENU – Install.
• For XP Machines: Go to Control Panel, click Run Advertised Programs and click on Adobe Flash 11.6 ENU – Install.

If you do not have admin rights on your PC, please contact either your local Ecolab or Nalco IT Service Desk using your standard process and local email address or telephone number.

The EARR section of INSIDE.Ecolab.com provides important overview information about Ecolab Associate Resolution Resources (EARR) and the Mediation and Arbitration Agreement for Ecolab U.S. associates (except associates covered under a collective bargaining agreement) beginning in 2014 (terms of the Arbitration Agreement control).
CONFIDENTIALITY NOTICE: This e-mail communication and any attachments may contain proprietary and privileged information for the use of the designated recipients named above. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

# EXHIBIT 1.5



US Mountain Time (UTC -07:00 Arizona)

| Course | Status |
|---|---|
| 45514 - Ecolab Code of Conduct | ● |
| 45641 - COC Refresh 2014 | ○ |
| 46141 - EARR and Alt Resolution | ○ |
| 46216 - coc_2015 | ○ |
| 46668 - Ecolab Code of Conduct 2016 | ○ |
| 200182 - CICS | ○ |

● = Not Started
◐ = In Progress
○ = Completed

**Student Info**

| Student Name: | Amber Moore |
|---|---|
| Course Name: | 46141 - The Ecolab Associate Resolution Resources (EARR) and Alternative Resolution Requirement Course |
| Training Assigned: | 10/2/2014 |
| Course Due Date: | 10/22/2014 |
| Course Expires: | 11/10/2014 |
| E-mail student: | ✉ |

**Training Session History**

| Client Computer | Session Started | Session Ended |
|---|---|---|
| null | 10/13/2014 5:52:10 AM | 10/13/2014 8:01:37 AM |
| null | 10/13/2014 12:15:31 PM | 10/13/2014 12:21:40 PM |

**Test Summary**

| Test Start | Test End | Score |
|---|---|---|
| NA | NA | NA |

**Additional Course Information**

| Policy Read | Custom Content Read | State Laws Read |
|---|---|---|
| NA | NA | NA |

© 2019 True Office Learning
license agreement | privacy policy



US Mountain Time (UTC -07:00 Arizona)

| Course | Status |
|---|---|
| 32043 - Supplier Interaction Training... | ○ |
| 45514 - Ecolab Code of Conduct | ● |
| 45641 - COC Refresh 2014 | ○ |
| 46141 - EARR and Alt Resolution | ○ |
| 46216 - coc_2015 | ○ |
| 46668 - Ecolab Code of Conduct 2016 | ○ |
| 48007 - Ecolab Code 2017 | ○ |
| 200182 - CICS | ○ |

● = Not Started
◐ = In Progress
○ = Completed

**Student Info**

| Student Name: | Amber Moore |
|---|---|
| Course Name: | 46141 - The Ecolab Associate Resolution Resources (EARR) and Alternative Resolution Requirement Course |
| Training Assigned: | 10/2/2014 |
| Course Due Date: | 10/22/2014 |
| Course Expires: | 11/10/2014 |
| E-mail student: | ✉ |

**Training Session History**

| Client Computer | Session Started | Session Ended |
|---|---|---|
| NA | NA | NA |

**Test Summary**

| Test Start | Test End | Score |
|---|---|---|
| NA | NA | NA |

**Additional Course Information**

| Policy Read | Custom Content Read | State Laws Read |
|---|---|---|
| NA | NA | NA |

© 2019 True Office Learning
license agreement | privacy policy

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Moore, Amber | 20125503 | Employee | United States of America | North America | 32043 | Supplier Interaction Training and Certification | 🟢 |
| Moore, Amber | 20125503 | Employee | United States of America | North America | 45514 | Ecolab Code of Conduct | 🔴 |
| Moore, Amber | 100/25503 | 100/25503 | US | North America | 45514 | Ecolab Code of Conduct | 🔴 |
| Moore, Amber | 100/25503 | 100/25503 | US | North America | 45641 | Ecolab Code of Conduct 2014 | 🟢 |
| Moore, Amber | 20125503 | Employee | United States of America | North America | 45641 | Ecolab Code of Conduct 2014 | 🟢 |
| Moore, Amber | 20125503 | Employee | United States of America | North America | 46141 | The Ecolab Associate Resolution Resources (EARR) and Alternative Resolution Requirement Course | 🟢 |
| Moore, Amber | 100/25503 | 100/25503 | US | North America | 46141 | The Ecolab Associate Resolution Resources (EARR) and Alternative Resolution Requirement Course | 🟢 |
| Moore, Amber | 100/25503 | 100/25503 | US | North America | 46216 | Ecolab Code of Conduct 2015 | 🟢 |
| Moore, Amber | 20125503 | Employee | United States of America | North America | 46216 | Ecolab Code of Conduct 2015 | 🟢 |
| Moore, Amber | 20125503 | Employee | United States of America | North America | 46668 | Ecolab Code of Conduct 2016 | 🟢 |
| Moore, Amber | 100/25503 | 100/25503 | US | North America | 46668 | Ecolab Code of Conduct 2016 | 🟢 |
| Moore, Amber | 20125503 | Employee | United States of America | North America | 48007 | Ecolab Code of Conduct 2017 | 🟢 |
| Moore, Amber | 20125503 | Employee | United States of America | North America | 200182 | Confidential Information and Computer Security | 🟢 |
| Moore, Amber | 100/25503 | 100/25503 | US | North America | 200182 | Confidential Information and Computer Security | 🟢 |

# EXHIBIT
# 1.6

# The Ecolab Associate Resolution Resources (EARR) and Mediation and Arbitration Agreement Course
### A Better Way to Resolve Workplace Concerns

    EARR and Mediation and Arbitration Agreement   1 | 18     

---



## Menu

In this course, you will

- Learn about Ecolab Associate Resolution Resources (EARR) and the Mediation and Arbitration Agreement
- Read the Mediation and Arbitration Agreement (the Agreement)
- You will be asked to sign two online forms
    1. Consent to Proceed Electronically
    2. Mediation and Arbitration Agreement

**ECOLAB**

     EARR and Mediation and Arbitration Agreement   2 | 18    

# The Work We Do Matters—You Matter

Ecolab **provides** support for our associates in the workplace – including resources to help you resolve any workplace issues or concerns that may arise.

**Today, we'll inform you about an expanded set of options for resolving disputes that are**

- Efficient
- Highly effective
- Likely to result in positive outcomes





EARR and Mediation and Arbitration Agreement

3 | 18

---

**Ecolab provides support for our associates in the workplace**

- Ecolab Associate Resolution Resources (EARR) provide support to help resolve workplace concerns
- Includes existing support channels and a new resource
- 15-minute education module to learn about EARR and the Mediation and Arbitration Agreement

    - What they mean to you
    - What you need to do





EARR and Mediation and Arbitration Agreement

3 | 18

At Ecolab

- We work with **purpose**
- We strive to do what's **right**, what's **fair**, what's **honest**
- We take action **together**

**You matter at Ecolab**, and Ecolab is committed to maintaining a **positive and ethical** workplace for you





## Building an Environment to Support You

**A positive and ethical workplace provides you**

- The **opportunity** to raise concerns
- The **support** you need to have concerns addressed

**And it encourages us to**

- **Work together** to resolve them



Ecolab Associate Resolution Resources



EARR provides many **forms of support** to help you to resolve small or large problems in the workplace

**These resources include**

- Your manager
- Your Human Resources representative
- The Employee Assistance Program (EAP)
- The Code of Conduct Helpline
- **NEW!** Ombudsperson ("Ombuds")

EARR helps resolve workplace issues or concerns efficiently, effectively and positively

**EC⊗LAB**

     EARR and Mediation and Arbitration Agreement   4 | 18   

## Your Manager

**One option to help you resolve a workplace issue is your manager, who**

- Knows you and understands what you do
- Can serve as a representative on your behalf
- May connect you with other resources



     EARR and Mediation and Arbitration Agreement   5 | 18     

# Your Human Resources Representative

**Another resource is your Human Resources representative**

- Understands Ecolab's policies and procedures
- Can help find answers
- Can help you explore options
- Can connect you to other resources if needed



     EARR and Mediation and Arbitration Agreement        6 | 18     

# The Employee Assistance Program (EAP)

**Ecolab also offers an Employee Assistance Program (EAP)**

- External, confidential resource to help you navigate both workplace and life challenges

    - Personal challenges may include parenting, personal finance, aging parents, health and wellness, substance abuse, divorce and more
    - Professional challenges may include work-life balance, resolving conflicts, stress management, setting career goals and more



     EARR and Mediation and Arbitration Agreement        7 | 18     

- An EAP representative can

  - Listen and offer support
  - Help you work through your approach to resolving your concern

Contact:
Available 24/7 at: 1.888.371.1125
*www.cignabehavioral.com*
(employer ID: ecolab)



EARR and Mediation and Arbitration Agreement    7 | 18

---

# Code of Conduct

You must complete the training module **each** year

**Ecolab's Code of Conduct upholds**

- Safe work environment
- Respectful workplace
- Ethical practices
- Fair competition

All employees must follow the **Code of Conduct**

If you have a concern about a possible Code of Conduct issue or violation, contact the **Code Helpline**

Answering service available 24/7 at: 1.800.299.9442



EARR and Mediation and Arbitration Agreement    8 | 18

## Ombudsperson ("Ombuds")

**The Ombuds**

- Confidential, neutral and independent professional
- Familiar with Ecolab's policies and procedures
- Can help you identify an appropriate course of action - using internal or external resources

The Ombuds is dedicated to supporting associates in identifying an appropriate course of action consistent with Ecolab's policies and procedures

Call 1.844.250.2505 for confidential access to the Ombuds. Or, visit *INSIDE.Ecolab.com/EARR*



EARR and Mediation and Arbitration Agreement 9 | 18





## Mediation and Arbitration Agreement (the Agreement)

**Most workplace issues are resolved using internal resources**

- Beginning in October, Ecolab is implementing a Mediation and Arbitration Agreement for U.S. Employees
- Exception - those employees covered under a collective bargaining agreement
- Employees and Ecolab must use mediation or arbitration to settle civil or class action legal disputes
- Mediation and arbitration provide many advantages

Ecolab U.S. employees must sign the Mediation and Arbitration Agreement by **October 22, 2014**

**Mediation    Arbitration**



EARR and Mediation and Arbitration Agreement 10 | 18

## Mediation

**A certified, third-party negotiator (mediator) from the American Arbitration Association**

- Listens to all parties
- Assists the parties with obtaining information, and developing options
- Focuses on a mutually beneficial and acceptable solution
- Helps all parties reach a compromise that can result in a binding agreement, but only if both parties agree





     EARR and Mediation and Arbitration Agreement   11 | 18    



## Arbitration

**A more formal proceeding with a professional, independent arbitrator from the American Arbitration Association**

- Listens to all parties
- Decides a final and binding outcome

      EARR and Mediation and Arbitration Agreement   12 | 18   



**Why Mediation and Arbitration?**

**Mediation and arbitration offer important benefits compared to civil or class action, including**

- Resolution within weeks or months, not months or years
- Lower legal fees for associates and Ecolab
- Ecolab covers the mediator's or arbitrator's fees
- You and Ecolab choose the mediator/arbitrator
- For those who file for mediation or arbitration, Ecolab provides up to $500 for legal consultation regardless of the outcome

**ECOLAB**

    EARR and Mediation and Arbitration Agreement   12 | 18      



**Arbitration Agreements** in place at many large U.S. companies

- Chevron
- Baker Hughes
- Darden Restaurants
- Unilever U.S.
- General Electric Company
- Brinker Restaurant Corp
- Terminix
- Sealed Air
- Rockwell
- Citibank
- Orkin
- ...and hundreds of other U.S. companies

**ECOLAB**

    EARR and Mediation and Arbitration Agreement   12 | 18     

## Mediation and Arbitration Agreement

**The mediation and arbitration requirement**

- Replaces filing of civil lawsuits with individual arbitrations
- Ecolab will ask agency or court to refer civil legal action to arbitration

The **arbitrator** takes the place of the judge and has authority to award damages to individual employees

- Allows employees to recover on an individual basis the same damages available in a civil court action





    EARR and Mediation and Arbitration Agreement 13 | 18   

---

**You don't give up your right to**

- File a charge with an administrative agency like the EEOC
- Report if you see something unethical or illegal under the whistle-blower status
- File a criminal complaint

You must sign the Arbitration Agreement by **October 22, 2014**

- Exception: Associates covered under a collective bargaining agreement

**Two-week signing period is equitable and effective**

- Enables associates and Ecolab to use EARR without delay
- Minimizes business disruption





     EARR and Mediation and Arbitration Agreement 13 | 18    

**If you do not sign the Agreement, you are choosing to end your employment with Ecolab**

Opportunity to review and sign the Arbitration Agreement by **October 22, 2014!**





    EARR and Mediation and Arbitration Agreement  13 | 18   

## Ecolab Consent to Proceed Electronically

Now it's time to take action.

There will be **two steps** to the agreement process. Both steps must be completed.

1. **Read** the Consent to Proceed Electronically document, then agree to **sign** electronically (rather than on paper)
2. **Read** the Mediation and Arbitration Agreement and electronically **sign**





    EARR and Mediation and Arbitration Agreement  14 | 18    

First, **read and agree** to the Ecolab Consent to Proceed Electronically document

- You must first agree to provide your electronic signature before moving on to the actual Mediation and Arbitration Agreement
- YOU WILL BE ASKED TO SIGN THE ACTUAL MEDIATION AND ARBITRATION AGREEMENT IN THE NEXT SECTION
- If you do not agree to providing an electronic signature:
    - The course will end here
    - You will need to make arrangements with your manager or Human Resources representative to sign a hard copy of the Agreement BEFORE the October 22, 2014 deadline





     EARR and Mediation and Arbitration Agreement   14 | 18  ▶ 

STEP 1: Consent to Proceed Electronically

Please take the time to **read** the Consent to Proceed Electronically document by clicking the button below

 **Consent to Proceed Electronically**





     EARR and Mediation and Arbitration Agreement   14 | 18    

<u>**Ecolab Consent to Proceed Electronically**</u>

Via your work computer email and internet system, you will be able to complete, review, and even print the documents using only your web browser. You only need your work computer system to use the electronic process. If you have trouble with this process, please contact your HR Representative for assistance.

Before Ecolab can accept your signature on the Mediation and Arbitration Agreement electronically, you should be aware of the following information and must affirmatively agree to the following:

1. If you proceed, you are agreeing to complete the Mediation and Arbitration Agreement electronically.
2. Your responses to all questions throughout either electronic process will be recorded and made part of your electronically signed documents and Mediation and Arbitration Agreement record.
3. You have the option to complete this process using the traditional paper and signature process. You must contact your HR Representative if you wish to sign the Mediation and Arbitration Agreement in ink.
4. To use this process, you will use your employee login/password. You must keep this information confidential as it can be used to electronically sign additional documents.
5. You have the right to request a paper copy of any documents you signed electronically. An electronic copy of the Mediation and Arbitration Agreement is available on Inside Ecolab.
6. You have read and agree with the attached verification and security procedures ("Privacy Policy" adopted by Ecolab. **Ecolab Privacy Policy**

**By clicking on the "Accept" button, you acknowledge and agree to all of the following:**

- I have read and understood the foregoing;
- I agree to proceed with the Mediation and Arbitration Agreement process through electronic means;
- I agree that my electronic signature is the equivalent of a manual signature and that Ecolab may rely on it as such in connection with any and all agreements I may enter into with Ecolab and any documents I electronically sign for Ecolab;
- I agree that my electronic signature in this Mediation and Arbitration Agreement process will consist of my clicking on the "Accept" button, which Ecolab will accept as my electronic signature.
- I acknowledge and agree that it is my obligation to immediately advise Ecolab of any change in my electronic address (i.e., email address);
- I have the necessary hardware/software to complete the process;
- I acknowledge and agree that it is my obligation to immediately advise Ecolab in the event that I withdraw my consent to use electronic means for the Mediation and Arbitration Agreement process (if applicable);

- I agree that in the event I withdraw my consent, any documents I electronically signed prior to Ecolab receiving notification of my withdrawal will be considered validly executed and the withdrawal of my consent does not apply retroactively;
- I acknowledge and agree that the various security and verification procedures adopted by Ecolab, as its Privacy Policy, **Ecolab Privacy Policy** applies to the documents that I will affix my electronic signature and constitute reasonable and secure security procedures and that all such signatures are attributable to me;
- I acknowledge and agree that in the event that any person known to me (whether it be a family member, member of my household, or otherwise) misappropriates any of the security devices connected with my Ecolab login/email/electronic signature account and such misappropriation could not reasonably be detected by Ecolab, the Company shall have the right to treat all resulting electronic signatures as though they were affixed by the person whose name is associated with this employee login/password;
- I acknowledge and agree that the individual completing this Consent to Proceed Electronically is the individual whose name appears on the email account associated with this Consent and whose name is associated with this employee login/password.

**IF YOU UNDERSTAND, ACCEPT AND AGREE TO THE POLICIES, TERMS AND CONDITIONS SET OUT ABOVE, THEN CLICK ON THE "AGREE" BUTTON TO PROCEED TO THE NEXT SECTION OF THE MEDIATION AND ARBITRATION AGREEMENT PROCESS. BY CLICKING ON THE "AGREE" BUTTON, YOU UNDERSTAND THAT THIS ACTION WILL BE RECORDED AS YOUR ELECTRONIC SIGNATURE AND WILL BE RELIED UPON BY THE COMPANY TO THE SAME EXTENT AS IF YOU HAD SIGNED THIS CONSENT IN INK. IF YOU DO NOT UNDERSTAND OR ACCEPT OR AGREE TO THE POLICIES, TERMS AND CONDITIONS SET OUT ABOVE, THEN YOU MAY CLOSE OUT OF THIS MODULE AND EXIT THIS PROCESS.**

4836-3406-7230, v. 1





STEP 1: Consent to Proceed Electronically

Please take the time to **read** the Consent to Proceed Electronically document by clicking the button below

 **Consent to Proceed Electronically**

**I UNDERSTAND THAT BY CLICKING THIS "AGREE" BUTTON, I AM ELECTRONICALLY SIGNING THE "CONSENT TO PROCEED ELECTRONICALLY" DOCUMENT**

 **Agree**

The green arrow will appear **after** your Agreement has been received





EARR and Mediation and Arbitration Agreement          14 | 18

---



# Mediation and Arbitration Agreement

STEP 2: Read and sign the **Mediation and Arbitration Agreement**

Read the **additional** materials sent to your home or, visit INSIDE.Ecolab.com/EARR

If you have questions - contact your Human Resources representative before the **October 22, 2014** deadline

EARR and Mediation and Arbitration Agreement          15 | 18





## ECOLAB MEDIATION AND ARBITRATION AGREEMENT

1. **Introduction**

   The Ecolab Mediation and Arbitration Agreement ("Agreement") is designed to provide an easy-to-use method for the economical and prompt resolution of Disputes (as defined below) between the Company and the Company's present and former Associates. Resolution of Disputes through the Agreement is typically less expensive and quicker than traditional litigation. The Agreement is intended to create a procedural mechanism for the final resolution of all Disputes falling within its terms. Neither the Company nor its present and former Associates may commence an action in court concerning a Dispute covered by the Agreement. The Agreement should be interpreted in accordance with these purposes.

2. **Definitions**

   **A.** "AAA" means the American Arbitration Association.

   **B.** The "Act" means the Federal Arbitration Act, 9 U.S.C. § 1 et seq., as amended from time to time.

   **C.** "Associate" means any person who is or has been employed by the Company in the United States or its territories, whether or not the individual was employed at the time a claim is brought, and the heirs, beneficiaries and assigns of the Associate. "You" refers to the Associate who is a signatory to this Agreement.

   **D.** "Company" means Ecolab and its subsidiaries, divisions and business units; any entity or person alleged to have joint and several liability concerning any Dispute; all of their directors, officers, employees and agents; every plan of benefits established or maintained by any such entity; the fiduciaries, agents and employees of all such plans; and the successors and assigns of all such entities, plans and persons.

   **E.** "Dispute" means any and all claims or controversies alleging violations of federal, state, local or common law between an Associate and the Company (and vice versa) arising out of or in any way related to the application for employment, employment or cessation of employment with the Company, including all previously unasserted claims prior to the date of this Agreement. The term "Dispute" includes, without limitation, claims, demands or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866 and 1991, the Age Discrimination in Employment Act of 1967, the Americans with Disabilities Act of 1990, the Family and Medical Leave Act of 1993, the Fair Labor Standards Act of 1938, the Equal Pay Act of 1963 and all amendments thereto and any other federal, state or local statute, regulation or common law doctrine regarding employment, employment discrimination, the terms and conditions of employment, termination of employment, compensation, overtime, breach of contract, retaliation, whistleblowing, defamation or employment-related tort. "Dispute" does not include claims related to: (i) workers' compensation benefits; (ii) unemployment compensation benefits; (iv) controversies over awards of benefits or incentives under the Company's stock option plans, employee benefits plans or welfare plans that contain an appeal procedure or other procedure for the resolution of such controversies; (v) an alleged violation of the National Labor Relations Act ("NLRA"); (vi) disputes that may not be subject to a predispute arbitration agreement as provided by the Dodd-Frank Wall Street Reform and Consumer Protection Act; and (vii) claims asserted by an Associate in any lawsuit or administrative proceeding pending against the Company prior to the date the Associate signs this Agreement where (a) you are a party to the lawsuit or administrative proceeding; or (b) if the pending lawsuit or administrative proceeding asserts a class or collective action, you are a party, member or putative member of the class or collective action against the Company and have not elected, before or after this Agreement is signed, to include yourself in the pending collective action or exclude yourself from the pending class action. This Agreement does not apply to disputes regarding the enforceability, revocability or validity of the Agreement or any portion of the Agreement. Such disputes can only be resolved by a court of competent jurisdiction. Additionally, nothing in this Agreement shall prevent either party from seeking relief from a court of competent jurisdiction for a temporary or preliminary restraining order or other like injunctive relief to prevent or enjoin the disclosure or use of a trade secret, patent, intellectual property or proprietary information, where such relief is required to permit the dispute to proceed to arbitration without one party incurring irreparable harm. Additionally, nothing in this Agreement precludes an Associate from filing a Charge or complaint with the Equal Employment Opportunity Commission, NLRB, or any other state or federal agency.

3. **Final and Conclusive Resolution of All Disputes**
   All Disputes shall be finally and conclusively resolved by final and binding arbitration before a neutral third party.

4. **Waiver of Class, Collective or Representative Action**
   Pursuant to the Agreement, Associates waive their rights to commence, be a party to or act as a class member in any class or collective action in any court or in arbitration related to any Dispute. Associates may not submit a multiparty, class, collective or representative action for resolution under this Agreement. Additionally, no arbitrator has the authority under this Agreement to proceed with arbitration on a multiparty, class, collective or representative action basis. Arbitration on an individual basis pursuant to this Agreement is the exclusive remedy for any claims which might otherwise be brought on a multiparty, class, collective or representative action basis. Accordingly, an Associate may not participate as class or collective action representatives or as members of any class, collective or representative action, and will not be entitled to any recovery from a class, collective or representative action in any forum under this Agreement. Any disputes concerning the validity or arbitrability of this class, collective and representative action waiver will be decided by a court of competent jurisdiction, not by an arbitrator. In the event this waiver is found to be unenforceable, any claim brought on a class, collective or representative action basis must be filed in a court of competent jurisdiction, and such court shall be the exclusive forum for all such claims.

   The Agreement does not preclude participation in proceedings to adjudicate unfair labor practices charges before the National Labor Relations Board ("NLRB"), including, but not limited to, charges addressing the enforcement of the group, class or collective action waiver set forth in the preceding paragraph.

5. **Confidentiality**
   The arbitration proceeding conducted pursuant to this Agreement shall not be open to the public, except as may be appropriate or required in response to legal process or governmental inquiry or investigation.

6. **Termination**
   This Agreement may be terminated by the Company at any time by giving at least thirty (30) days' notice to current Associates. However, termination shall not apply to a Dispute which arose prior to the date of notice.

7. **Applicable Law**
   The Act shall apply to any actions to compel, enforce, vacate or confirm proceedings, awards, orders of an arbitrator or settlements under the Agreement. Other than as expressly provided in the Agreement, the substantive individual claims, remedies and defenses of all Parties are preserved. The arbitrator shall decide all Disputes in accordance with the substantive law of the state or the federal circuit, or both, in which you are or were employed by the Company. In the case of arbitration, other than as expressly provided in the Agreement, the arbitrator shall have the authority to order any and all individual relief (legal or equitable), which a party could obtain from a court of competent jurisdiction on the basis of the claims made in the proceeding.

8. **Severability**
   The terms of the Agreement are severable. The invalidity or unenforceability of any provision in the Agreement shall not affect the application of any other provision. Where possible, consistent with the purposes of the Agreement, any otherwise invalid provision of the Agreement may be reformed and, as reformed, enforced, except that arbitration may only proceed in an individual capacity.

9. **Consideration and Assent**

Revision Date: September 22, 2014



Employment or continued employment constitutes assent by the Associate and the Company to be bound by the Agreement, both during the employment and after termination of employment. Further, in addition to employment or continued employment, the mutual agreement between Associates and the Company to be bound by the terms of the Agreement and other agreements made in the Agreement, including, but not limited to, the agreement by the Company to pay for the costs of mediation and arbitration and the first $500 of attorneys' fees incurred by an Associate in arbitration, constitute consideration for each party's obligations under the Agreement.

**10.** **Agreement Procedures**

The Company expects that most work-related concerns can be addressed with an Associate's manager or Human Resources. Accordingly, Associates are encouraged to review and utilize the guidance set forth in the "*Addressing Employee Concerns*" policy found in the HR Policy Manual on Inside Ecolab to resolve any work-related problem before initiating the procedures set forth below. Additionally, Associates can use Ecolab's internal resources, such as the Ombudsperson, to help resolve conflicts.

Where resolution cannot be achieved through Ecolab's internal resources, an Associate or the Company may demand mediation or arbitration.

A.  **Mediation**

Mediation involves an attempt by the Parties to resolve a Dispute with the aid of a neutral third party not employed by the Company. The Company will pay for the AAA costs of the mediation. The Dispute will be referred to mediation only if both parties agree to mediate. A mediation request may be made by serving a written request to any of the American Arbitration Association's regional offices via telephone, email, regular mail or fax. Requests for Mediation may also be filed online via the AAA website, www.adr.org. A list of regional offices and contact information is on the AAA website, www.adr.org. AAA Employment Mediation Procedures in existence at the time of the mediation request shall govern the mediation. Those Procedures can currently be found at www.adr.org.

B.  **Arbitration**

Arbitration is the process by which a neutral third party makes a binding decision relating to a Dispute. To initiate arbitration, either the Associate or the Company must file a written Demand for arbitration with the American Arbitration Association at any office of the AAA in accordance with the AAA Employment Arbitration Rules. The Demand must be made within the time period provided by the statute of limitations applicable to the claim(s) set forth in the demand. The Arbitration will be conducted in accordance with the AAA Employment Arbitration Rules, available at www.adr.org. To the extent there is any conflict between the AAA rules and this Agreement, the terms of this Agreement shall control.

(1)  **Evidence**

The arbitrator shall follow the Federal Rules of Evidence in determining all evidentiary issues.

(2)  **Dispositive Motions**

Parties shall be permitted to file dispositive motions, including motions for summary judgment.

(3)  **Award**

The award shall be in writing, shall explain the legal and factual basis of the award, and shall be signed by the arbitrator.

(4)  **Scope of Relief**

The arbitrator may award relief only to the individual Associate or the Company. The

Revision Date: September 22, 2014

**ECOLAB**®

arbitrator shall have the authority to award any damages, including compensatory damages, punitive or exemplary damages and injunctive relief to the extent permitted by applicable law, subject to the right of either party to seek preliminary injunctive relief as set forth in Paragraph 2(E) of this Agreement. If, under applicable federal, state or local law, the prevailing party would be entitled to an award of attorney's fees and costs, the arbitrator may award such fees and costs. The arbitrator shall not have the authority to award to the Company the costs of the arbitration that it is otherwise required to bear under this Agreement.

**(5) Scope of Arbitrator's Authority**

The arbitrator's authority shall be limited to the resolution of Disputes between the Parties. As such, the arbitrator shall be bound by and shall apply applicable law to the substantive claims, including those related to the allocation of the burden of proof. The arbitrator shall not have the authority to hear multiparty, class, collective or representative actions.

**(6) Costs, Fees and Expenses**

Unless otherwise precluded by applicable law, costs, fees and expenses shall be allocated as follows:

**a. Filing fees** — The Company shall pay any mediation or arbitration filing fee required by AAA.

**b. Discovery** — Discovery costs (e.g., court reporter fees for original transcripts) shall be paid by the party initiating the discovery. The cost of copies of deposition transcripts or other discovery shall be paid by the party ordering the copy.

**c. Experts** — The fees and expenses of experts, consultants and others retained or consulted by a party shall be paid by the party utilizing those services, unless otherwise agreed or as provided under applicable law.

**d. Hearing and arbitrator fees** — The Company shall pay the hearing fee and arbitrator fee for the hearing.

**e. Postponement** — Postponement and cancellation fees shall be payable, at the discretion of the arbitrator, by the party causing the postponement or cancellation, subject to applicable law.

**f. Other expenses** — The expenses of witnesses shall be paid by the party requiring the presence of such witness, except as otherwise provided by law. Other ordinary and reasonable expenses of the arbitration, including hearing room expenses, travel expenses of the arbitrator and any witnesses produced at the arbitrator's direction, shall be paid by the Company.

**g. Legal fees and expenses** — Each side shall pay its own legal fees and expenses subject to Paragraph B(4) above, except that the Company will pay the initial $500 incurred by an Associate in legal expenses if arbitration is demanded, regardless of whether the Associate is the prevailing party at arbitration.

Revision Date: September 22, 2014

**ECOLAB**®







## Thank You!

Working **together** to resolve issues helps lead to timely, cost-effective and positive outcomes.

**You have completed the EARR training module and electronically signed:**

- Ecolab Consent to Proceed Electronically Mediation and Arbitration Agreement
- Mediation and Arbitration Agreement

You will receive an email confirmation shortly

Thank you for your time today

Continue to the next screen to print your certificate of completion

**EC⊗LAB**

   EARR and Mediation and Arbitration Agreement    17 | 18      

---

**EC⊗LAB**

## Ecolab: EARR and Mediation and Arbitration Agreement

This is to certify that _____ has completed EARR training and signed the Ecolab Mediation and Arbitration Agreement.

[ Click to print and sign for your records ]

_____          02/15/2017
Sign                                                        Date

   EARR and Mediation and Arbitration Agreement    18 | 18      

# EXHIBIT 1.7

| | |
|---|---|
| **From:** | HR Communications <HRCommunicationsNA@ecolab.com> |
| **Sent:** | Monday, October 13, 2014 1:21 PM |
| **To:** | Amber Moore |
| **Subject:** | Confirmation: Ecolab Associate Resolution Resources (EARR) and Mediation and Arbitration Agreement |

Amber Moore[100/25503]

This email serves as acknowledgement that you, as an Ecolab associate, and Ecolab, have entered into a mutually binding agreement as stated below. This agreement also is signed by Laurie Marsh, Executive Vice President, Human Resources, acting as the official representative of Ecolab.

ECOLAB MEDIATION AND ARBITRATION AGREEMENT

1. Introduction

   The Ecolab Mediation and Arbitration Agreement ("Agreement") is designed to provide an easy-to-use method for the economical and prompt resolution of Disputes (as defined below) between the Company and the Company's present and former Associates. Resolution of Disputes through the Agreement is typically less expensive and quicker than traditional litigation. The Agreement is intended to create a procedural mechanism for the final resolution of all Disputes falling within its terms. Neither the Company nor its present and former Associates may commence an action in court concerning a Dispute covered by the Agreement. The Agreement should be interpreted in accordance with these purposes.

2. Definitions
   A. "AAA" means the American Arbitration Association.
   B. The "Act" means the Federal Arbitration Act, 9 U.S.C. § 1 et seq., as amended from time to time.
   C. "Associate" means any person who is or has been employed by the Company in the United States or its territories, whether or not the individual was employed at the time a claim is brought, and the heirs, beneficiaries and assigns of the Associate. "You" refers to the Associate who is a signatory to this Agreement.
   D. "Company" means Ecolab and its subsidiaries, divisions and business units; any entity or person alleged to have joint and several liability concerning any Dispute; all of their directors, officers, employees and agents; every plan of benefits established or maintained by any such entity; the fiduciaries, agents and employees of all such plans; and the successors and assigns of all such entities, plans and persons.
   E. "Dispute" means any and all claims or controversies alleging violations of federal, state, local or common law between an Associate and the Company (and vice versa) arising out of or in any way related to the application for employment, employment or cessation of employment with the Company, including all previously unasserted claims prior to the date of this Agreement. The term "Dispute" includes, without limitation, claims, demands or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Acts of 1866 and 1991, the Age Discrimination in Employment Act of 1967, the Americans with Disabilities Act of 1990, the Family and Medical Leave Act of 1993, the Fair Labor Standards Act of 1938, the Equal Pay Act of 1963 and all amendments thereto and any other federal, state or local statute, regulation or common law doctrine regarding employment, employment discrimination, the terms and conditions of employment, termination of employment, compensation, overtime, breach of contract, retaliation, whistleblowing, defamation or employment-related tort. "Dispute" does not include claims related to: (i) workers' compensation benefits; (ii) unemployment compensation benefits; (iv) controversies over awards of benefits or incentives under the Company's stock option plans, employee benefits plans or welfare plans that contain an appeal procedure or other procedure for the resolution of such controversies; (v) an alleged violation of the National Labor Relations Act ("NLRA"); (vi) disputes that may not be subject to a predispute arbitration agreement as provided by the Dodd-Frank Wall Street Reform and Consumer Protection Act; and (vii) claims asserted by an Associate in any lawsuit or administrative proceeding pending against the Company prior to the date the Associate signs this Agreement where (a) you are a party to the lawsuit or administrative proceeding; or (b) if the pending lawsuit or administrative proceeding asserts a class or collective action, you are a party, member or putative member of the class or collective action against the Company and have not elected, before or after this Agreement is signed, to include yourself in the pending collective action or exclude yourself from the pending class action. This Agreement does not apply to disputes regarding the enforceability, revocability or validity of the Agreement or any portion of the Agreement. Such disputes can only

1

be resolved by a court of competent jurisdiction. Additionally, nothing in this Agreement shall prevent either party from seeking relief from a court of competent jurisdiction for a temporary or preliminary restraining order or other like injunctive relief to prevent or enjoin the disclosure or use of a trade secret, patent, intellectual property or proprietary information, where such relief is required to permit the dispute to proceed to arbitration without one party incurring irreparable harm. Additionally, nothing in this Agreement precludes an Associate from filing a Charge or complaint with the Equal Employment Opportunity Commission, NLRB, or any other state or federal agency.

3.    Final and Conclusive Resolution of All Disputes

     All Disputes shall be finally and conclusively resolved by final and binding arbitration before a neutral third party.

4.    Waiver of Class, Collective or Representative Action

     Pursuant to the Agreement, Associates waive their rights to commence, be a party to or act as a class member in any class or collective action in any court or in arbitration related to any Dispute. Associates may not submit a multiparty, class, collective or representative action for resolution under this Agreement. Additionally, no arbitrator has the authority under this Agreement to proceed with arbitration on a multiparty, class, collective or representative action basis. Arbitration on an individual basis pursuant to this Agreement is the exclusive remedy for any claims which might otherwise be brought on a multiparty, class, collective or representative action basis. Accordingly, an Associate may not participate as class or collective action representatives or as members of any class, collective or representative action, and will not be entitled to any recovery from a class, collective or representative action in any forum under this Agreement. Any disputes concerning the validity or arbitrability of this class, collective and representative action waiver will be decided by a court of competent jurisdiction, not by an arbitrator. In the event this waiver is found to be unenforceable, any claim brought on a class, collective or representative action basis must be filed in a court of competent jurisdiction, and such court shall be the exclusive forum for all such claims.

     The Agreement does not preclude participation in proceedings to adjudicate unfair labor practices charges before the National Labor Relations Board ("NLRB"), including, but not limited to, charges addressing the enforcement of the group, class or collective action waiver set forth in the preceding paragraph.

5.    Confidentiality

     The arbitration proceeding conducted pursuant to this Agreement shall not be open to the public, except as may be appropriate or required in response to legal process or governmental inquiry or investigation.

6.    Termination

     This Agreement may be terminated by the Company at any time by giving at least thirty (30) days' notice to current Associates. However, termination shall not apply to a Dispute which arose prior to the date of notice.

7.    Applicable Law

     The Act shall apply to any actions to compel, enforce, vacate or confirm proceedings, awards, orders of an arbitrator or settlements under the Agreement. Other than as expressly provided in the Agreement, the substantive individual claims, remedies and defenses of all Parties are preserved. The arbitrator shall decide all Disputes in accordance with the substantive law of the state or the federal circuit, or both, in which you are or were employed by the Company. In the case of arbitration, other than as expressly provided in the Agreement, the arbitrator shall have the authority to order any and all individual relief (legal or equitable), which a party could obtain from a court of competent jurisdiction on the basis of the claims made in the proceeding.

8.    Severability

     The terms of the Agreement are severable. The invalidity or unenforceability of any provision in the Agreement shall not affect the application of any other provision. Where possible, consistent with the purposes of the Agreement, any otherwise invalid provision of the Agreement may be reformed and, as reformed, enforced, except that arbitration may only proceed in an individual capacity.

9.    Consideration and Assent

     Employment or continued employment constitutes assent by the Associate and the Company to be bound by the Agreement, both during the employment and after termination of employment. Further, in addition to employment or

continued employment, the mutual agreement between Associates and the Company to be bound by the terms of the Agreement and other agreements made in the Agreement, including, but not limited to, the agreement by the Company to pay for the costs of mediation and arbitration and the first $500 of attorneys' fees incurred by an Associate in arbitration, constitute consideration for each party's obligations under the Agreement.

10.    Agreement Procedures
        The Company expects that most work-related concerns can be addressed with an Associate's manager or Human Resources. Accordingly, Associates are encouraged to review and utilize the guidance set forth in the "Addressing Employee Concerns" policy found in the HR Policy Manual on Inside Ecolab to resolve any work-related problem before initiating the procedures set forth below. Additionally, Associates can use Ecolab's internal resources, such as the Ombudsperson, to help resolve conflicts.

        Where resolution cannot be achieved through Ecolab's internal resources, an Associate or the Company may demand mediation or arbitration.

        A.    Mediation
        Mediation involves an attempt by the Parties to resolve a Dispute with the aid of a neutral third party not employed by the Company. The Company will pay for the AAA costs of the mediation. The Dispute will be referred to mediation only if both parties agree to mediate. A mediation request may be made by serving a written request to any of the American Arbitration Association's regional offices via telephone, email, regular mail or fax. Requests for Mediation may also be filed online via the AAA website, www.adr.org. A list of regional offices and contact information is on the AAA website, www.adr.org. AAA Employment Mediation Procedures in existence at the time of the mediation request shall govern the mediation. Those Procedures can currently be found at www.adr.org.
        B.    Arbitration
        Arbitration is the process by which a neutral third party makes a binding decision relating to a Dispute. To initiate arbitration, either the Associate or the Company must file a written Demand for arbitration with the American Arbitration Association at any office of the AAA in accordance with the AAA Employment Arbitration Rules. The Demand must be made within the time period provided by the statute of limitations applicable to the claim(s) set forth in the demand. The Arbitration will be conducted in accordance with the AAA Employment Arbitration Rules, available at www.adr.org. To the extent there is any conflict between the AAA rules and this Agreement, the terms of this Agreement shall control.
        (1)    Evidence
        The arbitrator shall follow the Federal Rules of Evidence in determining all evidentiary issues.
        (2)    Dispositive Motions
        Parties shall be permitted to file dispositive motions, including motions for summary judgment.
        (3)    Award
        The award shall be in writing, shall explain the legal and factual basis of the award, and shall be signed by the arbitrator.
        (4)    Scope of Relief
        The arbitrator may award relief only to the individual Associate or the Company. The arbitrator shall have the authority to award any damages, including compensatory damages, punitive or exemplary damages and injunctive relief to the extent permitted by applicable law, subject to the right of either party to seek preliminary injunctive relief as set forth in Paragraph 2(E) of this Agreement. If, under applicable federal, state or local law, the prevailing party would be entitled to an award of attorney's fees and costs, the arbitrator may award such fees and costs. The arbitrator shall not have the authority to award to the Company the costs of the arbitration that it is otherwise required to bear under this Agreement.
        (5)    Scope of Arbitrator's Authority
        The arbitrator's authority shall be limited to the resolution of Disputes between the Parties. As such, the arbitrator shall be bound by and shall apply applicable law to the substantive claims, including those related to the allocation of the burden of proof. The arbitrator shall not have the authority to hear multiparty, class, collective or representative actions.
        (6)    Costs, Fees and Expenses
        Unless otherwise precluded by applicable law, costs, fees and expenses shall be allocated as follows:
                a.    Filing fees - The Company shall pay any mediation or arbitration filing fee required by AAA.
                b.    Discovery - Discovery costs (e.g., court reporter fees for original transcripts) shall be paid by the party initiating the discovery. The cost of copies of deposition transcripts or other discovery shall be paid by the party ordering the copy.
                c.    Experts - The fees and expenses of experts, consultants and others retained or consulted by a party shall be paid by the party utilizing those services, unless otherwise agreed or as provided under applicable law.

3

       d.    Hearing and arbitrator fees - The Company shall pay the hearing fee and arbitrator fee for the hearing.

       e.    Postponement - Postponement and cancellation fees shall be payable, at the discretion of the arbitrator, by the party causing the postponement or cancellation, subject to applicable law.

       f.    Other expenses - The expenses of witnesses shall be paid by the party requiring the presence of such witness, except as otherwise provided by law. Other ordinary and reasonable expenses of the arbitration, including hearing room expenses, travel expenses of the arbitrator and any witnesses produced at the arbitrator's direction, shall be paid by the Company.

       g.    Legal fees and expenses - Each side shall pay its own legal fees and expenses subject to Paragraph B(4) above, except that the Company will pay the initial $500 incurred by an Associate in legal expenses if arbitration is demanded, regardless of whether the Associate is the prevailing party at arbitration.

CONFIDENTIALITY NOTICE: This e-mail communication and any attachments may contain proprietary and privileged information for the use of the designated recipients named above. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.